UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KACI TINGLEY,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.

C26-2003 TSZ

ORDER

THIS MATTER comes before the Court on a Motion to Dismiss, docket no. 13, filed by Defendant JPMorgan Chase Bank, N.A. ("Chase"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

In April 2025, Plaintiff entered into an written agreement with Defendant Chase for a Home Equity Line of Credit ("HELOC") that concerned her home. 2d Am. Compl. at ⁋ 9 (docket no. 12). Plaintiff describes the HELOC as a "closed end credit instrument allowing Plaintiff access to up to $200,000 in borrowed money from Chase subject to interest and fees as agreed between them, provided that the lent money was secured by a lien against Plaintiff's" home. Id. at ⁋ 10. Near closing of the parties' HELOC

transaction, Chase identified Plaintiff's third-party creditor accounts and determined amounts to be paid using HELOC proceeds to resolve accounts. Id. at ⁋ 11. On or around May 2, 2025, Chase issued checks in the mail to pay off these third-party liabilities. Id.

Plaintiff received the checks on or about May 7, 2025, and promptly notified Chase that the payment amounts and processes were incorrect. Id. at ⁋ 12. On May 12, 2025, Chase requested updated payoff documentation, which Plaintiff provided, Chase confirmed receipt of the documentation, and Chase represented that wire transfers to Plaintiff's creditors were "in process." Id. Plaintiff alleges that she reasonably relied on Chase's representation. Id.

Chase allegedly failed to deliver payments to Plaintiff's creditors in a timely manner. Id. at ⁋ 13. Plaintiff made repeated written communications to Chase seeking confirmation that payments had been completed. Id. Plaintiff alleges that, "[a]s of May 22, 2025, none of the relevant creditors had been paid." Id. Chase subsequently issued a second set of disbursement checks that allegedly contained additional inaccuracies, and Chase provided inconsistent and contradictory explanations for its failure to complete the payoffs. Id.

From May 2025 through at least July 2026, Plaintiff has been forced to make recurring payments to certain creditors out of pocket to avoid late fees, additional interest, and potential damage to her credit. Id. at ⁋ 14. Plaintiff claims that these out-of-pocket payments have so far totaled no less than $19,446.45 and she has also incurred at least $2,865.05 in additional interest charges on an outstanding loan. Id.

Notwithstanding Plaintiff's many attempts to communicate these issues with Chase, including requests that Chase provide her with a complete, written accounting of the HELOC transaction, her complaints have allegedly remained ignored or inadequately addressed. Id. at ¶¶ 15, 18. Chase allegedly asserted that all creditor accounts have been paid; these statements are contradicted by the status of those accounts. Id. at ¶ 16. Based on Chase's purported HELOC advances of approximately $170,000 and the amounts actually disbursed to Plaintiff's creditor accounts, Chase added at least $52,183.83 in principal to the balance of Plaintiff's loan obligation, but failed to deliver a corresponding amount to Plaintiff or her creditors. Id. Chase allegedly continues to assert that a balance of at least $170,000 for HELOC advances remains outstanding on Plaintiff's account and accordingly charges Plaintiff interest. Id.

Plaintiff asserts three claims against Chase: (1) breach of contract, (2) violation of the Washington Consumer Protection Act ("WCPA"), RCW Chapter 19.86, and (3) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601. See id. at ¶¶ 25–39. Chase's Motion to Dismiss concerns only Count II, Plaintiff's WCPA claim. Mot. at 4 (docket no. 13).

## Discussion

### A. Legal Standard

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must indicate more than

mere speculation of a right to relief. Id. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation and quotation marks omitted). A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts to state a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). On a Rule 12(b)(6) motion, the question for the Court is whether the facts in the operative pleading sufficiently state a "plausible" ground for relief. See Twombly, 550 U.S. at 570. If the Court dismisses the complaint in part or in toto, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B. Count II – Violation of the WCPA**

Under the WCPA, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." RCW 19.86.020. To establish a WCPA claim, a plaintiff must prove five elements: "(1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice." Keodalah v. Allstate Ins. Co., 194 Wn.2d 339, 349–50, 449 P.3d 1040 (2019). All five elements must be established for a WCPA claim to be successful. Id. at 350. Chase argues that Plaintiff fails to establish the first and third elements. Mot. at 4–7 (docket no. 13). The Court agrees.

**1. Element One: Unfair or Deceptive Act or Practice**

Plaintiff claims that Chase's use of flawed systems to wrongfully charge HELOC principal and interest, incorrect distribution of advanced HELOC funds, and failure to investigate and correct errors constitute unfair and deceptive acts or practices. See 2d Am. Compl. at ¶ 31 (docket no. 12).

"Whether a particular act or practice is 'unfair or deceptive' is a question of law." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 47, 204 P.3d 885 (2009) (quoting Leingang v. Pierce Cty. Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997). "A practice is unfair if it 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits [to consumers or to competition].'" Shields v. Fred Meyer Stores Inc., 741 F. Supp. 3d 915, 930–31 (W.D. Wash. 2024) (quoting Alpert v. Nationstar Mortg. LLC, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019)). To show that an act or practice is "deceptive," a plaintiff need only show that the act or practice "had the capacity to deceive a substantial portion of the public." Panag, 166 Wn.2d at 47. "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." Id. at 50 (quoting Sw. Sunsites, Inc. v. FTC, 785 F.2d 1431, 1435 (9th Cir. 1986) (emphasis omitted)).

The parties rely primarily on two cases to support their respective positions. In Capitol Pros, Inc. v. Vadata, Inc., 2018 WL 883870 (W.D. Wash. Feb. 14, 2018), the plaintiff sued the defendant for breach of contract and violation of the WCPA, alleging the defendant unfairly used a form contract and unfairly caused the plaintiff's employees

to breach their fiduciary duties. Id. at *2–4. The Capitol Pros Court rejected the plaintiff's theory that the defendant's unfair use of a form contract constituted an unfair or deceptive act or practice in part because (1) the plaintiff failed to specify contract terms that provided the defendant with an unfair advantage, and (2) the fact that the defendant may engage in additional commercial dealings under a similar form contract does not alone indicate conduct with the potential to deceive a substantial portion of the public. Id. In Ham v. JPMorgan Chase Bank, N.A., 2024 WL 1345078 (W.D. Wash. Mar. 29, 2024), the plaintiff alleged that Chase violated the WCPA by failing to conduct an effective investigation into timely reported fraud claims in violation of the parties' Deposit Account Agreement ("DAA"). Id. at *9. The Ham Court concluded that the plaintiff sufficiently stated a claim under the WCPA because the plaintiff alleged that Chase's website represented that it serves over 60 million households, which led to a plausible inference that a large portion of those relationships are governed by the DAA. Id. at *10. This inference entitled the plaintiff to discovery regarding other potential failures by Chase to properly investigate fraudulent transfer claims as required under the DAA. Id.

The Court concludes that Plaintiff failed to plead sufficient facts showing that Chase's conduct was unfair or deceptive. Unlike in Ham, Plaintiff does not identify any provision of the HELOC that required Chase to properly investigate its alleged shortcomings in disbursing funds to Plaintiff and her creditors. The Court therefore construes Chase's alleged representations about disbursements as unique to the relationship between the parties without a real and substantial potential for repetition.

See Behnke v. Ahrens, 172 Wn. App. 281, 295–96, 294 P.3d 729 (2012). Plaintiff's broad allegations concerning Chase's use of common systems, services, policies, and procedures, standing alone, are insufficient to indicate conduct with the potential to deceive a substantial portion of the public. See Capitol Pros, 2018 WL 883870, at *4.

**2. Element Three: Public Interest Impact**

Plaintiff claims that Chase's systemic payment processing and investigative oversights injured or had or have the capacity to injure other Washington consumers, thereby affecting the public interest. See 2d Am. Compl. at ¶ 24 (docket no. 12).

"Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790, 719 P.2d 531 (1986). The "likelihood that additional plaintiffs have been or will be injured in exactly the same fashion" is what "changes a factual pattern from a private dispute to one that affects the public interest." Id. The Hangman Court outlined the following factors that indicate public interest in this context: "(1) Were the alleged acts committed in the course of defendant's business; (2) Did defendant advertise to the public in general; (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others; and (4) Did plaintiff and defendant occupy unequal bargaining positions?" Id. at 790–91. None of these factors are dispositive, and it is not necessary that all be present. Id. at 791.

Plaintiff does not allege that the parties' HELOC is a form contract offered by Chase to its customers, and Plaintiff's allegations do not directly address the Hangman

factors. The Second Amended Complaint contains no allegations, other than conclusory statements, that Chase's obligations under the parties' HELOC are not unique to the parties' specific relationship. Absent adequate factual allegations that could characterize this dispute as one that affects the public interest and not merely a private one, Plaintiff's WCPA claim cannot survive dismissal under Rule 12(b)(6).

**C. Leave to amend**

Plaintiff requests leave to amend the operative pleading. Resp. at 13 (docket no. 17). Chase opposes, arguing that any future amendment would be futile and Plaintiff's WCPA claim should be dismissed with prejudice. See Reply at 9 (docket no. 18).

Federal Rule of Civil Procedure 15(a)(2) directs district courts to "freely give leave when justice so requires." As the language of the rule suggests, the standard for leave to amend is "very liberal." AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 951 (9th Cir. 2006). The Court must be guided by "the underlying purpose of Rule 15," which is "to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." Lopez, 203 F.3d at 1127. Leave to amend should be granted unless "strong evidence" exists of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original, quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

The Court concludes that amendment at this stage is not futile, and Plaintiff's request for leave to amend is GRANTED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss, docket no. 13, is GRANTED in part and DENIED in part. Plaintiff's WCPA claim as pleaded in the Second Amended Complaint is DISMISSED without prejudice.

(2) Plaintiff Kaci Tingley's request for leave to amend is GRANTED. On or before October 23, 2026, Plaintiff shall file any amended complaint containing modifications with respect to only the WCPA claim,.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 1st day of October, 2026.

Thomas S. Zilly
United States District Judge